IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| AFFINITY LABS OF TEXAS, LLC,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | **C.A. No.** _____ |
| ) | |
| NIKE, INC. and APPLE, INC.,  ) | |
| ) | |
| Defendants.  ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |

## COMPLAINT

Now comes Plaintiff Affinity Labs of Texas, LLC before this Court and alleges as its

complaint and petition for relief against Defendants Nike, Inc. and Apple, Inc. (collectively,

"Defendants") for infringement of U.S. Patent No. 7,062,225 ("the '225 Patent"), U.S. Patent

No. 7,251,454 ("the '454 Patent"), and U.S. Patent No. 7,519,327 ("the '327 Patent")

(collectively, the "Patents-in-Suit") as follows:

## PARTIES

1.      Plaintiff Affinity Labs of Texas, LLC ("Affinity") is a Texas limited liability

company having its main office at 9400 Wade Boulevard, Suite 921, Frisco, Texas.

2.      Upon information and belief, Defendant Nike, Inc. ("Nike") is an Oregon

corporation having its principal place of business located at One Bowerman Drive, Beaverton,

Oregon.

1

3.    Upon information and belief, Defendant Apple, Inc. ("Apple") is a California corporation having its principal place of business located at 1 Infinite Loop, Cupertino, California.

4.    Affinity is an innovation company that generates new product and business ideas. While Affinity often seeks to rely on partner organizations to provide the manufacturing and marketing operations for certain technology areas, Affinity is currently developing a software application to integrate a portable media player with a performance monitoring system as described in the Patents-in-Suit as well as a pending patent application.

5.    Nike designs, manufactures, offers to sell, markets, and/or sells high quality footwear, apparel, equipment, and accessory products, including the Nike+ line of sport gear designed for integration with Apple's iPod Nano, iPod Touch and iPhone lines of products, Apple's iTunes desktop application, and Nike's website. Nike offers to sell, markets, and/or sells the Nike+ line of sport gear through Nike's retail stores and website (www.nike.com) and through independent retailers and websites. Nike is the largest seller of athletic footwear and athletic apparel in the world.

6.    Apple designs, manufactures, offers to sell, markets, and/or sells the iPod, iPod Touch and iPhone lines of portable consumer electronics products and accessories for certain of Nike's products, including the Nike + iPod Sports Kit. Apple offers to sell, markets, and/or sells the foregoing through Apple's retail stores and website (www.apple.com) and through independent retailers and websites. Apple also designs, manufactures, offers to sell, markets, and/or sells mobile software applications designed to run on the iPod Touch and iPhone lines of portable consumer electronics products through its online store accessible through the iTunes desktop software application and the App Store mobile application.

2

7.      Upon information and belief, Apple requested and received necessary FCC certifications for at least the Nike + iPod Sports Kit and the iPod, iPod Touch and iPhone lines of portable consumer electronics products.

## JURISDICTION AND VENUE

8.      These claims arise under the Patent Laws of the United States, 35 U.S.C. §101 *et seq.*, in that each is a claim for infringement of a United States patent.  The jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Nike.  Upon information and belief, Nike has transacted business in this judicial district and has committed, contributed to, and/or induced acts of patent infringement in this judicial district.

10.      This Court has personal jurisdiction over Apple.  Upon information and belief, Apple has transacted business in this judicial district and has committed, contributed to, and/or induced acts of patent infringement in this judicial district.

11.      Venue within this District is proper under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## DEFENDANTS' KNOWLEDGE AND INFRINGEMENT OF THE PATENTS-IN-SUIT

12.      On or about June 14, 2006, Affinity's predecessor-in-interest (named Affinity Labs, LLC and referred to collectively with Affinity in this section as "Affinity") sent a letter jointly addressed to Nike and Apple, in which Affinity introduced itself and its long interest in the combination of sport and music as a business opportunity.  The letter also notified Nike and Apple of Affinity's portfolio of patent applications and the '225 Patent and provided both companies with a copy of the '225 Patent and the pending claims for two related patent applications that subsequently issued as the '454 and '327 Patents. Affinity identified its

developing patent portfolio and broadly proposed meeting and entering into a business relationship with Nike and Apple.

13.    After receiving the letter and learning of Affinity's portfolio, Nike and Apple begun to sell their first product to seamlessly integrate Apple's portable media player with Nike's running shoes, the Nike + iPod Sport Kit.

14.    Correspondence and telephone calls ensued between Nike and Affinity for several months regarding Affinity's portfolio.  In an August 22, 2006 phone call, Nike's in-house attorney explained to Affinity that the success of the Nike+ product line in the marketplace had made it difficult for the Nike attorney to get the attention of the appropriate Nike decision makers. After August 2006, communications with Nike stalled while Affinity waited for Nike to evaluate the business opportunity.

15.    A similar sequence of events developed with Apple.  Shortly after Affinity's initial June 14, 2006 letter, and before the launch of the Nike + iPod Sport Kit product, the Managing Attorney of Apple's iPod Division contacted Affinity by telephone regarding the '225 Patent.  Affinity sent a follow-up letter to Apple on August 25, 2006, asking whether Apple had interest in a transaction with respect to the '225 Patent and the related portfolio.

16.    In January 2007, a different Apple attorney contacted Affinity.  Affinity responded in March 2007, explaining why the current Apple product offerings were already practicing the claimed inventions of the '225 Patent, reminding Apple that there were multiple related pending applications that were highly relevant to Apple, and offering to meet with Apple and its business development group.

17.    The next month, Apple responded to Affinity, declining interest.  Affinity made another attempt at a business solution with Apple in June 2007, again reminding Apple of the

related pending applications in the portfolio and asking for a definitive response so that Affinity could determine whether it should approach other non-shoe companies. Apple never responded to this letter.

18.    In July 2007 – by which point Nike had already announced that its Nike+ product line was having a "huge impact" on the company's financial performance – Affinity again sent a letter to Nike notifying it that an additional patent related to the '225 Patent was likely to issue and attempting to ascertain whether Nike would be interested in developing a business relationship. Nike did not respond.

19.    On January 28, 2008, Affinity sent Nike a copy of the '454 Patent – the second patent to issue in this portfolio. Affinity again asked if Nike was interested in discussing the portfolio.

20.    On March 3, 2008, Nike responded by letter and a series of e-mail messages, which led to a telephone call on April 24, 2008 regarding Affinity's portfolio, including the '225 and '454 Patents.

21.    During the April 24, 2008 telephone call, Affinity discussed the breadth of the disclosure included in the patents and pending applications. Affinity also explained how the portfolio could act and had already acted as a roadmap for Nike and Apple product development.

22.    Between the April 24, 2008 telephone call and November of 2009, Affinity reached out to Nike on multiple occasions and received no response.

23.    On November 4, 2009, Affinity sent a copy of the newly issued '327 Patent to Nike and asked whether Nike had made a final decision with respect to its interest in working with Affinity. Again, Affinity received no response.

24.     By late 2009, it became apparent to Affinity that Nike and Apple would not entertain a business solution despite profiting from the manufacturing and marketing of Affinity's patented technology.  Affinity generated sufficient revenue during 2009 to allow it to begin developing its own Sport + products for the market and is currently developing a software product that can practice various claims in the Patents-in-Suit.

25.     Since shortly after Affinity's initial contact with Nike and Apple, both Nike and Apple have generated extraordinary profits using Affinity's patented technology.

26.     After receiving copies of Affinity's '225 Patent and Affinity's then-pending claim sets, both Nike and Apple filed patent applications seeking patent protection on the Nike + product line.

27.     Years after Affinity's patent filing and months after learning of Affinity's '225 Patent, Nike filed at least U.S. Provisional Patent App. No. 60/824,822.  Nike has since converted that provisional application into at least U.S. Patent Application No 11/848988 (the "Nike Application").  The Assistant General Counsel and Managing Attorney for Intellectual Property at Nike, who was also the lead correspondent for Nike for most of the Affinity/Nike communications, appeared himself as a named inventor on the Nike Application.

28.     Similarly, years after Affinity's patent filing and months after learning of Affinity's '225 Patent, Apple filed several patent application, including at least pending U.S. Patent Application No 11/729,133 ("the Apple '133 Application") and applications that have now issued as U.S. Patent Nos. 7,623,077 and 7,623,078.

## COUNT 1:  PATENT INFRINGEMENT OF THE '225 PATENT

29.     The allegations of paragraphs 1-28 are incorporated herein by reference.

30.     Plaintiff Affinity is the sole owner by assignment of the '225 Patent, which issued on June 13, 2006 and is entitled "Pedometer System and Method of Use."  A copy of the '225 Patent is attached hereto as Exhibit A.

A.     **Nike's Infringement of the '225 Patent**

31.     On or about June 14, 2006, Affinity placed Nike on notice of the '225 Patent and the pendency of additional related patent applications covering Nike's activities.

32.     Upon information and belief, Nike has infringed and, if not enjoined, will continue to infringe one or more claims of the '225 Patent by performing, without authority, one or more of the following acts: (a) making, using, offering for sale, or selling within the United States products that infringe one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(a); (b) importing into the United States products that infringe one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(a); (c) inducing infringement of one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(b); and/or (d) contributing to the infringement of one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(c) ("Nike's acts of infringement of the '225 Patent").

33.     Upon information and belief, Nike's acts of infringement of the '225 Patent include: (i) manufacturing, marketing, offering for sale, importing, and/or selling the Nike+ line of products, including the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband; (ii) marketing, offering for sale, importing, and/or selling of the iPod Nano and iPod Touch portable consumer electronics products; and (iii) using the Nike+ line of products, including the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband, with the iPod Nano, iPod Touch and iPhone portable consumer electronics products manufactured by Apple, Inc.

34.    Nike's acts of infringement have been willful.

35.    Upon information and belief, Nike will continue to infringe the '225 Patent unless enjoined by this Court.

36.    As a result of Nike's infringement, Affinity has suffered and will continue to suffer damages.

37.    Affinity is entitled to recover from Nike the damages sustained by Affinity as a result of Nike's wrongful acts in an amount subject to proof at trial.

**B.    Apple's Infringement of the '225 Patent**

38.    On or about June 14, 2006, Affinity placed Apple on notice of the '225 Patent and the pendency of additional related patent applications covering Apple's activities.

39.    Upon information and belief, Apple has infringed and, if not enjoined, will continue to infringe one or more claims of the '225 Patent by performing, without authority, one or more of the following acts: (a) making, using, offering for sale, or selling within the United States products that infringe one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(a); (b) importing into the United States products that infringe one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(a); (c) inducing infringement of one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(b); and/or (d) contributing to the infringement of one or more claims of the '225 Patent, in violation of 35 U.S.C. §271(c) ("Apple's acts of infringement of the '225 Patent").

40.    Upon information and belief, Apple's acts of infringement of the '225 Patent include: (i) manufacturing, marketing, offering for sale, importing, and/or selling the iPod Nano, iPod Touch, and iPhone line of products and certain of the Nike+ line of products, including the Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband; and (ii) using the iPod Nano, iPod

Touch and iPhone portable consumer electronics products with the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and/or Nike+ Armband.

41.   Apple's acts of infringement have been willful.

42.   Upon information and belief, Apple will continue to infringe the '225 Patent unless enjoined by this Court.

43.   As a result of Apple's infringement, Affinity has suffered and will continue to suffer damages.

44.   Affinity is entitled to recover from Apple the damages sustained by Affinity as a result of Apple's wrongful acts in an amount subject to proof at trial.

## COUNT 2:  PATENT INFRINGEMENT OF THE '454 PATENT

45.   The allegations of paragraphs 1-44 are incorporated herein by reference.

46.   Plaintiff Affinity is the sole owner by assignment of the '454 Patent, which issued on July 31, 2007 and is entitled "Athletic Performance Monitoring System and Method." A copy of the '454 Patent is attached hereto as Exhibit B.

### A.   Nike's Infringement of the '454 Patent

47.   Upon information and belief, Apple had notice of the '454 Patent since before or shortly after its issuance and received a copy of the '454 Patent on or about January 28, 2008.

48.   Upon information and belief, Nike has infringed and, if not enjoined, will continue to infringe one or more claims of the '454 Patent by performing, without authority, one or more of the following acts:  (a) making, using, offering for sale, or selling within the United States hardware and software products that infringe one or more claims of the '454 Patent, in violation of 35 U.S.C. §271(a); (b) importing into the United States products that infringe one or more claims of the '454 Patent, in violation of 35 U.S.C. §271(a); (c) inducing infringement of

one or more claims of the '454 Patent, in violation of 35 U.S.C. §271(b); and/or (d) contributing to the infringement of one or more claims of the '454 Patent, in violation of 35 U.S.C. §271(c) ("Nike's acts of infringement of the '454 Patent").

49.    Upon information and belief, Nike's acts of infringement of the '454 Patent include: (i) manufacturing, marketing, offering for sale, importing, and/or selling the Nike+ line of products, including the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband; (ii) marketing, offering for sale, importing, and/or selling of the iPod Nano and iPod Touch portable consumer electronics products; (iii) using the Nike+ line of products, including the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband, with the iPod Nano, iPod Touch and iPhone portable consumer electronics products manufactured by Apple, Inc.; and (iv) developing, maintaining, using, marketing, and making available the Nike+ website (*see, e.g.,* http://nikerunning.nike.com/nikeos/p/nikeplus/en_US/), including developing and maintaining software applications and databases for the Nike+ website for use with the Nike+ line of products, the iPod Nano, iPod Touch and iPhone portable consumer electronics products and the iTunes desktop application from Apple, Inc.

50.    Nike's acts of infringement have been willful.

51.    Upon information and belief, Nike will continue to infringe the '454 Patent unless enjoined by this Court.

52.    As a result of Nike's infringement, Affinity has suffered and will continue to suffer damages.

53.    Affinity is entitled to recover from Nike the damages sustained by Affinity as a result of Apple's wrongful acts in an amount subject to proof at trial.

**B.    Apple's Infringement of the '454 Patent**

54.    Upon information and belief, Apple had notice of the '454 Patent since before or shortly after its issuance.

55.    Upon information and belief, Apple has infringed and, if not enjoined, will continue to infringe one or more claims of the '454 Patent by performing, without authority, one or more of the following acts: (a) making, using, offering for sale, or selling within the United States hardware and software products that infringe one or more claims of the '454 Patent in violation of 35 U.S.C. §271(a); (b) importing into the United States products that infringe one or more claims of the '454 Patent, in violation of 35 U.S.C. §271(a); (c) inducing infringement of one or more claims of the '454 Patent, in violation of 35 U.S.C. §271(b); and/or (d) contributing to the infringement of one or more claims of the '454 Patent, in violation of 35 U.S.C. §271(c) ("Apple's acts of infringement of the '454 Patent").

56.    Upon information and belief, Apple's acts of infringement of the '454 Patent include: (i) manufacturing, marketing, offering for sale, importing and/or selling the iPod Nano, iPod Touch, and iPhone line of products and certain of the Nike+ line of products, including the Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband; (ii) using the iPod Nano, iPod Touch and iPhone portable consumer electronics products with the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and/or Nike+ Armband; and (iii) developing, maintaining, using, marketing, and making available the iTunes desktop software application, including developing and maintaining software applications and databases for the iTunes desktop application for use with the Nike+ line of products, the iPod Nano, iPod Touch and iPhone portable consumer electronics products and the Nike+ website.

57.    Upon information and belief, Apple's acts of infringement have been willful.

58.    Upon information and belief, Apple will continue to infringe the '454 Patent unless enjoined by this Court.

59.    As a result of Apple's infringement, Affinity has suffered and will continue to suffer damages.

60.    Affinity is entitled to recover from Apple the damages sustained by Affinity as a result of Apple's wrongful acts in an amount subject to proof at trial.

**COUNT 3:  PATENT INFRINGEMENT OF THE '327 PATENT**

61.    The allegations of paragraphs 1-60 are incorporated herein by reference.

62.    Plaintiff Affinity is the sole owner by assignment of the '327 Patent, which issued on April 14, 2009 and is entitled "Athletic monitoring system and method."  A copy of the '327 Patent is attached hereto as Exhibit C.

**A.    Nike's Infringement of the '327 Patent**

63.    Upon information and belief, Nike had notice of the '327 Patent since before or shortly after its issuance.

64.    On or about November 4, 2009, Affinity sent Nike a copy of the '327 Patent.

65.    Upon information and belief, Nike has infringed and, if not enjoined, will continue to infringe one or more claims of the '327 Patent by performing, without authority, one or more of the following acts:  (a) making, using, offering for sale, or selling within the United States hardware and software products that infringe one or more claims of the '327 Patent, in violation of 35 U.S.C. §271(a); (b) importing into the United States products that infringe one or more claims of the '327 Patent, in violation of 35 U.S.C. §271(a); (c) inducing infringement of one or more claims of the '327 Patent, in violation of 35 U.S.C. §271(b); and/or (d) contributing

to the infringement of one or more claims of the '327 Patent, in violation of 35 U.S.C. §271(c) ("Nike's acts of infringement of the '327 Patent").

66.    Upon information and belief, Nike's acts of infringement of the '327 Patent include: (i) manufacturing, marketing, offering for sale, importing, and/or selling the Nike+ line of products, including the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband; (ii) using the Nike+ line of products, including the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband, with the iPhone portable consumer electronics product manufactured by Apple Inc.; and (iii) developing, maintaining, using, marketing, and making available the Nike+ website (*see, e.g.,* http://nikerunning.nike.com/nikeos/p/nikeplus/en_US/), including developing and maintaining software applications and databases for the Nike+ website for use with the Nike+ line of products, the iPhone portable consumer electronics product and the iTunes desktop application from Apple, Inc.

67.    Nike's acts of infringement have been willful.

68.    Upon information and belief, Nike will continue to infringe the '327 Patent unless enjoined by this Court.

69.    As a result of Nike's infringement, Affinity has suffered and will continue to suffer damages.

70.    Affinity is entitled to recover from Nike the damages sustained by Affinity as a result of Nike's wrongful acts in an amount subject to proof at trial.

**B.    Apple's Infringement of the '327 Patent**

71.    Upon information and belief, Apple had notice of the '327 Patent since before or shortly after its issuance.

13

72.    Upon information and belief, Apple has infringed and, if not enjoined, will continue to infringe one or more claims of the '327 Patent by performing, without authority, one or more of the following acts:  (a) making, using, offering for sale, or selling within the United States hardware and software products that infringe one or more claims of the '327 Patent, in violation of 35 U.S.C. § 271(a); (b) importing into the United States hardware and software products that infringe one or more claims of the '327 Patent, in violation of 35 U.S.C. § 271(a); (c) inducing infringement of one or more claims of the '327 Patent, in violation of 35 U.S.C. § 271(b); and/or (d) contributing to the infringement of one or more claims of the '327 Patent, in violation of 35 U.S.C. § 271(c) ("Apple's acts of infringement of the '327 Patent").

73.    Upon information and belief, Apple's acts of infringement of the '327 Patent include: (i) manufacturing, marketing, offering for sale, importing and/or selling the iPhone portable consumer electronics product and certain of the Nike+ line of products, including the Nike + iPod Sport Kit, Nike+ Sensor and Nike+ Armband; (ii) using the iPhone portable consumer electronics product with the Nike+ line of shoes, Nike + iPod Sport Kit, Nike+ Sensor and/or Nike+ Armband; (iii) developing, maintaining, using, marketing, and making available the iTunes desktop software application from Apple, Inc., including developing and maintaining software and databases for the iTunes desktop application for use with the Nike+ line of products, the iPhone portable consumer electronics products and the Nike+ website; (iv) selling, offering for sale, marketing, and making available certain GPS based mobile applications, such as RunKeeper Pro, through the App Store accessible on the iPhone portable consumer electronics products or the iTunes desktop software application; and (v) using the iPhone portable consumer electronics product with certain GPS based mobile applications, such as RunKeeper Pro.

74.    Upon information and belief, Apple's acts of infringement have been willful.

14

75.     Upon information and belief, Apple will continue to infringe the '327 Patent unless enjoined by this Court.

76.     As a result of Apple's infringement, Affinity has suffered and will continue to suffer damages.

77.     Affinity is entitled to recover from Apple the damages sustained by Affinity as a result of Apple's wrongful acts in an amount subject to proof at trial.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment of the United States Constitution, Affinity hereby demands a jury trial on all issues triable to a jury.

### REQUEST FOR RELIEF

WHEREFORE, Affinity petitions this Court and requests that a judgment be entered and relief be granted as follows:

A.     Declaring that Nike and Apple have infringed the Patents-in-Suit as alleged herein (directly, by inducement, and/or contributorily);

B.     Declaring that Nike's and Apple's acts of infringement of the Patents-in-Suit have been willful;

C.     Permanently enjoining, restraining, and prohibiting Nike and Apple, and any party acting through, for, or in concert with Nike or Apple from further infringing (directly, by inducement, or contributorily) any claim of the Patents-in-Suit;

D.     Awarding to Affinity such monetary or compensatory damages as may be found or deemed adequate to fully compensate Affinity for each of Nike's and Apple's acts of infringement of the Patents-in-Suit and/or any other injury suffered by Affinity due to Nike's and

Apple's acts of infringement of the Patents-in-Suit, including increased damages for Nike's and

Apple's willful infringement;

      D.     Awarding to Affinity its costs and attorneys' fees; and

      E.     Awarding to Affinity such other, further, or general relief as this Court may deem

proper.


Respectfully submitted,


Dated:     February 16, 2010      By:  /s/ Thomas W. Sankey
      Thomas W. Sankey
      Lead Attorney
      TX Bar No. 17635670
      twsankey@duanemorris.com
      Jordan T. Fowles
      TX Bar No. 24048471
      jtfowles@duanemonis.com
      **Duane Morris LLP**
      3200 Southwest Freeway, Suite 3150
      Houston, TX 77027-7534
      Tel.: 713.402.3900
      Fax: 713.402.3901


      Of Counsel:

      L. Norwood Jameson
      wjameson@duanemorris.com
      Matthew C. Gaudet
      mcgaudet@duanemorris.com
      Stephanie A. Hansen
      sahansen@duanemorris.com
      **Duane Morris LLP**
      1180 West Peachtree Street, Suite 700
      Atlanta GA 30309-3448
      Tel: 404.253.6900
      Fax:    404.253.6901

Brian McQuillen
bmcquillen@duanemorris.com
**Duane Morris LLP**
1540 Broadway
New York, NY 10036-4086
Tel.:  212.692.1000
Fax:  212.692.1020

ATTORNEYS FOR PLAINTIFF
AFFINITY LABS OF TEXAS